UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PABLO SUAREZ-ROSABAL,

        Petitioner,

    v.

                                Case No. 2:26-cv-1376-KCD-DNF

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

        Respondents,

                              /

## **ORDER**

Petitioner Pablo Suarez-Rosabal is a Cuban citizen who has a final order of removal. (*See* Doc. 9-1 at 2.)[1] Last year, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody. (Doc. 1.)

The background of this dispute is straightforward. Suarez-Rosabal entered the United States in 2005 and became a lawful permanent resident. (Doc. 9-1 at 2.) But following a conviction for "Child Abuse/ Aggravated/ Great Bodily Harm/Torture," an immigration judge ordered his removal. Because Suarez-Rosabal is a Cuban national—making his actual deportation unlikely at the time—ICE could not immediately effectuate his return. So the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Government released him on an order of supervision, which is essentially a form of immigration parole. Then, during a probation check-in on November 4, 2025, ICE arrested him, revoked his release, and put him behind bars. He has been detained ever since. (*See* Doc. 9-1.)

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

2

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Suarez-Rosabal has been detained longer than six months. Yet the Government argues that when the habeas petition was filed, he had been locked up for only 174 days—just shy of the required six-month mark. Because *Zadvydas* creates a six-month window of presumptive reasonableness, the Government concludes we must reflexively throw out the petition as premature. (Doc. 9 at 4.) The Court is not convinced. As a matter

3

of plain fact, Suarez-Rosabal's continuous custody has now sailed well past the *Zadvydas* threshold.

The writ of habeas corpus does not operate in a time capsule, nor is it a static historical exercise frozen on the day the clerk stamps the docket. Its entire purpose is to test the validity of an ongoing confinement. *See, e.g., See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot). Executive detention that was presumptively reasonable on day 174 does not get a free pass when it stretches past day 190. To accept the Government's rigid timeline would work a complete absurdity, reducing these cases to a bureaucratic game of whack-a-mole. If this Court were to throw out the petition today, Suarez-Rosabal could simply turn around and file an identical petition this afternoon—forcing the parties and this Court to duplicate this exercise all over again next week. The law does not require such senseless procedural hoop-jumping. Because Suarez-Rosabal's detention has now eclipsed the six-month mark, the dispute is live and ready for review. *See Nagy v. United States Att'y Gen.*, No. 19-23933-CV, 2019 WL 13215658, at *2 (S.D. Fla. Nov. 5, 2019) ("In order to state a due process

4

claim under *Zadvydas*, a petitioner must have been *detained* for more than six months." (emphasis added).)

On the merits, Suarez-Rosabal has cleared *Zadvydas*'s initial hurdle. To shift the statutory burden, he need not prove a negative with absolute certainty. He just needs to provide a "good reason to believe" that his removal is nowhere on the horizon. *Zadvydas*, 533 U.S. at 701. He does just that by highlighting a telling silence in the record: the total absence of any travel documents for his removal. In this context, that showing is plenty. We are dealing with a Cuban national whose removal order has been outstanding since 2024, and who the Government already had to release once on supervision precisely because his deportation stalled. When a removal order sits unexecuted for years and the necessary travel certificates remain entirely nonexistent, a petitioner has done more than enough to sound the alarm and push the ball into the Government's court.

Once the petitioner makes a plausible showing that his removal has stalled, as here, the Government cannot just sit back. It must "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Yet we get absolutely nothing of the sort here—you will not find a single affidavit from a deportation officer tracking an active travel document request, nor any mention of an upcoming flight. Quite the opposite, the Government's file flatly admits that a valid travel document is "Not in file." (Doc. 9-1 at 3.)

5

Instead of providing the factual receipts the law requires, the Government offers a mere legal shrug, resting entirely on the boilerplate mantra that the petition is premature. But when the burden shifts, the Government cannot defeat a habeas petition by pointing to an empty record and asking this Court to simply take its word for it.

It is easy to see why this outcome might cause unease. Suarez-Rosabal is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 682. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Suarez-Rosabal will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains

6

subject to the strict conditions of his prior order of supervision. To the extent Suarez-Rosabal raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Suarez-Rosabal from custody within 48 hours of this Order under the prior conditions of supervision, which he must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 20, 2026.

Kyle C. Dudek
United States District Judge

7